INTERNATIONAL & GREAT NORTHERN RAILWAY COMPANY V.
B. M. HATCHELL.

Decided January 24, 1900.

1. Carrier—Damages—Live Stock Shipment.

Where a carrier was not notified that cattle delivered to it for transportation had already been contracted to be sold, and that it was necessary for them to be delivered by it at a certain day in order to effect the sale, special damages resulting from the loss of such sale are not chargeable to the carrier, even though the transportation of the cattle was unnecessarily delayed.

2. Same—Connecting Carrier—Pleading.

In order to hold a carrier liable for the negligence of its connecting carriers, their acts from which the liability might arise must be alleged and proved.

APPEAL from the County Court of Houston. Tried below before Hon. E. WINFREE.

*N. A. Stedman* and *G. H. Gould,* for appellant.

*Adams & Adams,* for appellee.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by appellee against appellant to recover damages alleged to have accrued from injury to and delay in delivering at their destination a certain shipment of cattle.

It is alleged that the cattle were delivered to appellant by a connecting carrier in Galveston on the 27th day of April, 1898, in time for it to have carried and delivered them to the consignee at their destination in Crockett on that day, and that by reason of unnecessary delay they did not reach their destination until the next day; that by reason of such delay appellee lost a sale which he had made of the cattle to the consignee, T. F. Smith, at $15 per head, to whom he had contracted to deliver on the 27th of April. Whereby, on account of a decline in the market, he was forced to sell at a loss of $2 per head, aggregating a loss to appellee of $300.

It was further alleged that by careless and reckless handling the cattle were so badly injured that twelve head died, each of which was worth $15, aggregating $180; and that eleven head were so badly injured that they were each damaged $7.50, aggregating $82.50.

The answer of appellant contains (1) a general demurrer; (2) special exception to the sufficiency of the averments of damages; (3) a general denial; (4) special plea that after the cattle were delivered to appellant they were only detained the time required for feeding and watering.

The case was tried without a jury and resulted in a judgment against appellant for $529, from which it has appealed.

The facts show that the cattle were shipped between 4 and 5 o'clock p. m. on the 26th of April, 1898, from Kirbyville, Jasper County, Texas,

over the Gulf, Beaumont & Kansas City Railroad, without bill of lading or written contract of shipment; that they were transported over said road to Beaumont; thence over the Gulf & Interstate Railway to Galveston, where they arrived at 12 o'clock m. on April 27th; that they left Galveston at 12:50 p. m. on same day over the Galveston, Houston & Henderson Railway by a Missouri, Kansas & Texas train, and arrived at Houston at 4:05 o'clock p. m. of the same day; that they were then and there unloaded and fed and watered by appellant, the International & Great Northern Railroad Company, and rested until between 2 and 3 o'clock a. m. of April 28th, when appellant began to reload them, and when reloaded they were started over appellant's road at 7:30 a. m. of that day to Crockett, where they arrived at 2:34 o'clock p. m., which was within the time it ordinarily takes appellant to transport freight of that character from Houston to Crockett. It is not shown from the evidence that appellant was guilty of any negligence in handling the cattle, or they were in any way injured from the time they were received by it until they were received by appellee's agent at their destination. But it appears that all the injury they received was inflicted by connecting carriers before they were delivered to appellant.

While it appears from the evidence that the agent of the Gulf, Beaumont & Kansas City Railroad Company at Kirbyville was notified by appellee that the cattle had to be in Crockett by April 27, 1898, yet it does not appear that such agent was informed of appellee's alleged sale to Smith, nor of the terms of such sale. It is clearly shown that the notice given the initial carrier as to when the cattle should be in Crockett was never communicated to appellant, and that, although an agent of appellee accompanied the cattle on the entire route, appellant was never informed of their alleged sale to Smith, nor that the terms of such sale required the cattle to be delivered in Crockett by the 27th of April. Nor is there any evidence tending to show that there was any decline of the market in cattle at Crockett during the day appellee claims his should have been delivered there, or during the day they arrived there.

*Opinion.*—If the notice to the agent of the initial carrier at Kirbyville that the cattle had to be in Crockett by the 27th of April, 1898, can be imputed to the terminal carrier, the question is, can appellant be held to damages for the loss of the alleged sale to Smith by reason of the cattle not having reached their destination in time for its consummation? The general rule is that "Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect to such breach of contract should be such as may be fairly and reasonably considered either arising naturally, that is, according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in contemplation of both parties, at the time they made the contract, as to the probable result of it." The principles of law embodied in this rule were recognized and applied by

the English and American courts long before it was formulated in 1854 in the leading case of Hadley v. Baxendale, 9 Exch., 341.

It is well settled that for the breach of a contract to transport goods, the consignee, or owner, may recover damages for the depreciation of the goods in market during the delay; that is, the difference between the market price when and where they should have been delivered, and when they were actually delivered. Sedg. on Dam., sec. 854. This is in the nature of general damages and need not be specially alleged.

In the case of a previous sale of the goods, which was communicated to the carrier when he received them for transportation, and when the contract was entered into for the express purpose of enabling the seller to complete the sale, the damages for the breach of the contract would be the difference between the price at which the goods were bargained and the price the owner or consignee was enabled to sell them for in the market. Sedg. on Dam., sec. 856. For such damages or loss would be the direct and natural result of the carrier's breach of the contract, and such as would have been foreseen and contemplated by the parties. Damages for loss of sale are special and must be specifically pleaded. In such a case it is essential that the carrier should understand the extent of the responsibility he assumes, and the consequence of failure on his part to deliver the goods within the required time; and if no special circumstances are communicated to him he can only be held responsible for the consequences which might ordinarily be supposed to flow from his breach of the contract. Deming v. Railway, 48 N. H., 455.

In the case under consideration it is not alleged nor proven that the agent of the initial carrier at Kirbyville was informed when the cattle were shipped, or at any time, of their sale, and that to effect it, it was necessary that they should be delivered in Crockett by the 27th of April. Such agent was only informed that they must be there by that time, but no information was given him of why they should.

It is thus seen from well established principles of law applicable to the facts in this case, that though the notice to the agent of the Gulf, Beaumont & Kansas City Railroad at Kirbyville should be imputed to appellant, which notice did not impart information of the sale, appellant would not be liable for special damages occasioned by the loss of the sale, although it should appear that the transportation of the cattle were unnecessarily delayed. Nor could it be held liable for a loss caused by a depreciation in market value between the time they should have been delivered and when they reached their destination; for no such depreciation is shown by the evidence.

Thus much upon the assumption that the notice given by appellee to the initial carrier's agent Kirbyville can be imputed to appellant. As to whether, under article 331a, Revised Statutes, the agent of the initial carrier was the agent of appellant, and it charged with knowledge of notice to such agent, is, under the view we take of the case, a question we need not determine. For if it should receive an affirmative answer, the

notice was not such as would render appellant or any of its connecting carriers liable for damages sustained on account of the loss of the sale.

Nor is it necessary to determine whether, under the article referred to, appellant can be held responsible for the failure of any of its connecting carriers to safely and speedily transport the cattle; for there is no allegation of the failure of either to discharge this duty. The acts of negligence and the delay upon which this action is founded are charged to have been committed by appellant alone. Against only such acts of negligence was it called upon to defend. To hold it liable for the negligence of its connecting carriers, the acts of such carriers from which the liability might arise should be averred and proven.

Because the damages awarded appellee are not such as are recoverable under the pleadings and evidence, the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*